Neogenestar, LLC v Crivera Partners Corp. (2026 NY Slip Op 50251(U))

[*1]

Neogenestar, LLC v Crivera Partners Corp.

2026 NY Slip Op 50251(U)

Decided on February 18, 2026

Supreme Court, Richmond County

Castorina, Jr., J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 18, 2026
Supreme Court, Richmond County

Neogenestar, LLC, Plaintiff,

againstCrivera Partners Corp., Defendant.

Index No. 151458/2023

Attorneys for the PlaintiffAaron Morris Schlossberg 
50 Main Street Suite 1000White Plains, NY 10606 
Phone: (646) 698-8752 
E-mail: [email protected]Attorney for Defendants 
Jesse David Eisenberg 
JDE Law Firm, PLLC 
260 Christopher LnStaten Island, NY 10314 
Phone: (718) 966-0877 
E-mail: [email protected]

Ronald Castorina, Jr., J.

I. Procedural History
Plaintiff commenced this action seeking monetary relief arising from an alleged transaction with defendant Crivera Partners Corp. involving Paxlovid, an antiviral medication available only by prescription. Defendant failed to appear or answer. By prior order of this Court, plaintiff obtained a default judgment as to liability against the corporate defendant.
Because plaintiff's claimed damages were not for a sum certain, the matter was set down for an inquest pursuant to CPLR § 3215 [b]. The inquest was conducted before this Court on January [*2]15, 2026. Plaintiff appeared and was represented by counsel. Defendant, having defaulted and not having moved to vacate the default, appeared through counsel solely to observe the proceedings.
At the conclusion of the inquest, the Court directed the submission of written post-inquest summations. The Court reserved decision.
II. Findings of FactAt the inquest, plaintiff presented the testimony of Nancy Quan, the founder and chief executive officer of Neogenestar, LLC. The Court finds her testimony credible insofar as it concerned the fact of payment and non-delivery.
The evidence established that in or about December 2022, plaintiff transmitted two wire payments to defendant Crivera Partners Corp. in the amounts of $18,600 and $8,050, for a total of $26,650. (tr at 10, line 16, through 11, line 5). Those payments were transmitted in connection with an agreement pursuant to which defendant purported to sell plaintiff Paxlovid, a prescription medication. (tr at 7, lines 7-14).
Plaintiff never received the medication. (see id lines 19-24). Upon learning of the non-delivery, plaintiff demanded repayment of the funds transmitted. (tr at 11, lines 21-24). Defendant agreed to return the monies but failed to do so. (tr at 12, lines 4-10). Plaintiff thereafter commenced this action to recover the amount paid. (see id at lines 14-18).
The plaintiff's witness testified that she holds a medical degree obtained outside the United States. (tr at 8, line 25, through 9, line 5). She further testified, however, that she is not licensed to practice medicine in the State of New York and is not licensed to practice medicine in any other state within the United States. (tr at 9, lines 6-17). The record further reflects that Paxlovid is available only by prescription, and there is no evidence that the attempted transaction was undertaken pursuant to any lawful prescription or other authorization permitting its distribution or acquisition. (tr at 7, line 22, through 8, line 10).
The evidence also established that plaintiff incurred attorneys' fees and litigation-related expenditures in prosecuting this action. Testimony was elicited only as to an aggregate figure. No retainer agreement, contemporaneous billing records, invoices, itemized statements, receipts, or other documentary proof substantiating such claimed attorneys' fees or expenditures was offered, marked for identification, or admitted into evidence at the inquest.
Finally, the inquest record contains no evidence that defendant was licensed, registered, or otherwise legally authorized to sell or distribute prescription medication, and no evidence that the alleged transaction complied with applicable federal or New York State law governing the distribution of prescription drugs.
III. Conclusions of LawA. Effect of Default and Scope of Inquest
A defendant's default constitutes an admission of the traversable allegations of the complaint as to liability, but not as to the amount of damages unless the claim is for a sum certain. Where damages are not certain, the plaintiff must establish damages at an inquest (see Rokina Optical Co., Inc. v Camera King, Inc., 63 NY2d 728 [1984]). Even upon default, the Court retains an independent obligation to ensure that any award is supported by competent proof and is legally [*3]permissible.
B. Illegality and Public Policy
New York courts will not lend their aid to the enforcement of illegal agreements or to claims that depend upon proof of an illegal transaction (see Gray v Hook, 4 NY 449 [1851]). Where an agreement is illegal, the law leaves the parties where it finds them.
The Court of Appeals has further recognized that even where a contract is lawful on its face, illegal performance may bar recovery when there exists a "direct connection" between the illegality and the obligation sued upon; the necessary connection is a matter of degree, informed by public-policy considerations (see FCI Group v City of New York, 54 AD3d 171 [2 Dept 2008]). The Second Department has consistently applied these principles to deny recovery where the illegality is central to the transaction or to the performance for which compensation is sought. (see Alpha Interiors, Inc. v Tulger Constr. Corp., 101 AD3d 660 [2 Dept 2012]; Linchitz Practice Mgt., Inc. v Daat Med. Mgt., LLC, 165 AD3d 908 [2 Dept 2018]). A party's illegal acts in the performance of a legal contract may, under certain circumstances, vitiate its right to recover on the contract (see McConnell v Commonwealth Pictures Corp., 7 NY2d 465 [1960]). 
At the same time, courts recognize that not every statutory violation renders an agreement unenforceable. Where a violation is malum prohibitum, the statute does not expressly bar suit, and forfeiture would be disproportionate, enforcement may be permitted (see Simaee v Levi, 22 AD3d 559 (2d Dept 2005); see also Benjamin v Koeppel, 85 NY2d 549 [1995]; Lloyd Capital Corp. v Pat Henchar, Inc., 80 NY2d 124 [1992]; R.A.C. Group, Inc. v Board of Educ. of City of NY, 21 AD3d 243 [2005]). Rather, "[i]f the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy . . . the right to recover will not be denied" (see Rosasco Creameries, Inc. v Cohen, 276 NY 274 [1937]). Furthermore, "forfeitures by operation of law are disfavored, particularly where a defaulting party seeks to raise illegality as 'a sword for personal gain rather than a shield for the public good' . . . Allowing parties to avoid their contractual obligation is especially inappropriate where there are regulatory sanctions and statutory penalties in place to redress violations of the law" (see Lloyd Capital Corp. v Pat Henchar, Inc., supra at 128, quoting Charlebois v Weller Assoc., 72 NY2d 587 [1988]). 
C. Application to the Present Case
The transaction at issue involved the purported sale of Paxlovid, a prescription medication. New York's statutory framework governing prescription drugs requires lawful authorization and regulated dispensing and distribution channels (see Education Law §§ 6801, 6810). 
On the record developed at the inquest, there is no evidence that defendant was authorized to sell or distribute prescription medication, and no evidence that the attempted transaction was undertaken pursuant to any lawful prescription or otherwise complied with the statutory and regulatory framework governing prescription drugs. Under these circumstances, the Court cannot enforce the alleged bargain, nor award expectancy or benefit-of-the-bargain damages, without risking the judicial legitimization of conduct contrary to public policy (McConnell v Commonwealth Pictures Corp., supra; see also R.A.C. Group, Inc. v Bd. of Educ. of City of NY, 21 AD3d 243 [2d Dept 2005]) (public policy may bar contractual recovery where enforcement would permit a party [*4]to profit from wrongdoing).
IV. Post-Inquest SummationsThe Court has received and considered the post-inquest summations submitted by both parties. The Court emphasizes, however, that a summation is not evidence and serves only as legal argument based upon the evidentiary record developed at the inquest. The inquest constituted the sole evidentiary proceeding in this matter, and the record closed upon its conclusion.
To the extent either summation references factual material, documents, or purported proof not offered or admitted into evidence at the inquest, such material is not part of the record and has not been considered. In particular, plaintiff's summation repeatedly characterizes materials and assertions as having been "proved" or "admitted" at the inquest notwithstanding that the transcript reflects otherwise. A summation is not an opportunity to reopen proof, supplement the evidentiary record, amend the proceedings, or recast the testimony given at the hearing. The Court's findings and damages determination are based solely on the testimony and exhibits actually admitted into evidence at the inquest.
V. Conclusion as to Loss and DamagesA. Restitution
Although the Court will not enforce the alleged agreement, it may award restitution to prevent unjust enrichment, provided such relief does not require judicial enforcement of an illegal bargain (Linchitz Practice Mgt., Inc., supra).
Plaintiff has established by a preponderance of the evidence that it paid defendant $26,650.00, which defendant retained without delivering any product. Restitution of that sum is therefore appropriate.
B. Attorneys' Fees
Plaintiff also seeks an award of attorneys' fees. As an initial matter, the Court's damages determination must rest on the evidentiary record created at the inquest. Here, no retainer agreement, contemporaneous billing records, invoices, itemizations, or other competent proof was offered, authenticated, or admitted into evidence to substantiate the amounts claimed or their reasonableness. The Court therefore declines to award attorneys' fees on the independent ground that they were not proven at the inquest.
The Court further concludes that, even if plaintiff had adduced documentary proof of the amounts claimed, attorneys' fees would remain non-recoverable as a matter of law on this record. Under New York's American Rule, attorneys' fees and disbursements are incidents of litigation and may not be shifted to an adversary absent an authorizing statute, court rule, or agreement (Matter of A.G. Ship Maintenance Corp. v Lezak, 69 NY2d 1 [1986]). To the extent a party relies on contract, fee-shifting provisions are strictly construed and will not be inferred unless the intent to shift fees is "unmistakably clear" from the agreement (Hooper Assoc., Ltd. v AGS Computers, Inc., 74 NY2d 487 [1989]). No statute, court rule, or admissible agreement satisfying those standards has been established here.
Additionally, and independently, the Court has determined that it cannot enforce the alleged underlying bargain without risking the sanctioning or legitimization of unlawful conduct in the distribution of prescription medication. Where public policy bars enforcement of an unlawful transaction, courts do not permit a party to obtain through litigation the incidents of that unlawful bargain (McConnell v Commonwealth Pictures Corp., supra; see R.A.C. Group, Inc., supra. Accordingly, even assuming arguendo that counsel fees had been itemized and admitted, the Court would decline to award them on public-policy grounds in view of the illegality concerns inherent in the transaction.
C. Statutory Costs and Taxable Disbursements
The Court further notes, for the sake of clarity, that certain statutory costs and taxable disbursements, such as filing fees, service fees, and transcript costs necessarily incurred, may, in appropriate circumstances, be recoverable by a prevailing party pursuant to CPLR § 8101 and § 8301. The Court is mindful of its discretion to award such relief where it is properly sought and supported.
Here, however, no documentary evidence establishing statutory costs or taxable disbursements was offered, marked, or admitted into evidence at the inquest, nor was testimony elicited delineating such expenses in a manner sufficient to permit an award. In the absence of any evidentiary foundation, the Court cannot exercise its discretion to grant statutory costs or disbursements, notwithstanding that such relief might otherwise have been available had it been properly proved.
D. Interest
Plaintiff is entitled to prejudgment interest on the restitution award at the rate of nine percent (9%) per annum pursuant to CPLR § 5001 and CPLR § 5004, calculated from December 2022, when the cause of action accrued.
VI. Conclusion and Decretal Paragraphs
Accordingly, it is hereby:
ORDERED, that plaintiff is awarded judgment against defendant Crivera Partners Corp. in the principal amount of $26,650, as restitution; and it is further
ORDERED, that plaintiff is awarded statutory interest at 9% per annum, on said sum pursuant to CPLR § 5001 and CPLR § 5004 from December 2022; and it is further
ORDERED, that plaintiff's requests for attorneys' fees are DENIED; and it is further
ORDERED, that no statutory costs or taxable disbursements are awarded in the absence of proof admitted at the inquest, notwithstanding the Court's discretion to award such items upon a proper evidentiary showing; and it is further
ORDERED, that the Clerk of the Court is directed to enter judgment accordingly.
Dated: February 18, 2026Staten Island, New YorkE N T E R,HON. RONALD CASTORINA, JR.JUSTICE OF THE SUPREME COURT